UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| CATHEY LYNCH, | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:14-cv-20-HSM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|    *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Cathey Lynch ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings [Doc. 14] and has filed a memorandum in support [Doc. 14-1]. Defendant has moved for summary judgment [Doc. 15] and has filed a memorandum in support [Doc. 16]. This matter is now ripe. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 15] be **DENIED**; and (3) the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for DIB on September 8, 2010, alleging disability as of January 1, 2009 (Transcript [Doc. 10] ("Tr.") 133, 135). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing before the ALJ (Tr. 83, 87, 89).

ALJ Richard A. Opp held a hearing on October 10, 2012, during which Plaintiff was represented by an attorney (Tr. 37). The ALJ issued a decision on November 8, 2012, in which the ALJ determined Plaintiff was not disabled because Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 18-31). Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision on January 3, 2013 (Tr. 12-16). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-4). Plaintiff filed the instant action on March 28, 2014 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was 44 years old on the alleged onset date (Tr. 30). Plaintiff has at least a high school education and is able to communicate in English (Tr. 30). Plaintiff has past relevant work as a registered nurse, as a hand packer, and as a customer service representative (Tr. 40-41). Plaintiff stopped working when the company she was working for as a customer service representative was laying off employees, allegedly because her supervisor recommended that Plaintiff take the severance pay given her absenteeism due to medical problems (Tr. 41-43).

### B. Medical Records

Plaintiff's arguments focus on the ALJ's consideration of the medical records provided by certain sources, namely the opinions of Dr. Woodrow Wilson, Certified Family Nurse Practitioner Conan Carter, Dr. Kanika Chaudhuri, and Dr. Nathaniel Robinson. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be summarized here, but all relevant records have been reviewed.

2

### 1. Dr. Wilson's Records

Dr. Wilson examined Plaintiff on March 4, 2011 at the request of the state agency (Tr. 431). Dr. Wilson noted that Plaintiff had a history of fibromyalgia, migraine headaches, irritable bowel syndrome, chronic obstructive pulmonary disease, and neck pain (Tr. 432). In addition to noting Plaintiff's care providers, current medications, allergies, surgical history, social history, and family history, Dr. Wilson performed a physical examination of Plaintiff (Tr. 432-33). Dr. Wilson found Plaintiff to be well-developed; well-nourished; alert; in no obvious distress; of average intelligence; functioning "okay"; able to get out of a chair without difficulty; cooperative; reliable and pleasant (Tr. 433). Dr. Wilson found that Plaintiff's head, ears, eyes, nose, and throat were normal (Tr. 434). Dr. Wilson examined Plaintiff's neck and found that she had no adenopathy or masses; no bruits or jugular vein distention; a fairly recent surgical scar to the anterior right side of her neck; flexion to 20 degrees, extension to 30 degrees, lateral deviation to the left side of 30 degrees and to the right side of 20 degrees, rotation to the left side of 45 degrees, and rotation to the right side of 70 degrees (Tr. 434). Dr. Wilson noted that Plaintiff complained of neck pain when she moved her neck (Tr. 434).

Dr. Wilson found that Plaintiff's respiratory and cardiovascular systems were normal and her abdomen was normal, although she complained of generalized tenderness (Tr. 434). Dr. Wilson examined Plaintiff's musculoskeletal system and found that she had normal gait; good cadence; no difficulty walking six steps in tandem; the ability to go up on her toes and back on her heels; the ability to balance weight on each foot independently; she was negative for Romberg's; her shoulders had full range of motion on both sides except she only has forward extension to 140 degrees; her elbows, wrists, and hands all have full range of motion; her hips, knees, and ankles have full range of motion on both sides without limitation; no joint effusion;

3

no calf tenderness; no swelling or pitting edema; she had flexion to 90 degrees, extension to 30 degrees, and lateral deviation in each direction to 30 degrees; her straight leg raise was negative on both sides; and she did not complain of any pain in her back from moving (Tr. 434). Dr. Wilson found Plaintiff's neurological exam to be good, noting that her cranial nerves were intact grossly; her motor strength was 5/5; her sensation to touch was intact generally; her cerebellar functioning was good; and her deep tendon reflexes were 2+ and equal bilaterally (Tr. 434).

    Dr. Wilson completed a medical source statement of Plaintiff's ability to perform physical work-related activities (Tr. 441-46). In a checklist form, Dr. Wilson opined that Plaintiff could continuously lift up to ten pounds; occasionally lift 11 to 20 pounds; and never lift more than 21 pounds (Tr. 441). Dr. Wilson further opined, by checking off boxes, that Plaintiff could continuously carry up to ten pounds; frequently carry 11 to 20 pounds; occasionally carry 21 to 50 pounds, but never lift 51 pounds or more (Tr. 441). Dr. Wilson opined that Plaintiff could sit for one hour, stand for 30 minutes, and walk for 20 minutes at one time without interruption; he further opined that she could sit for 6 hours total, stand for three hours total, and walk for three hours total in an eight-hour workday (Tr. 442). Dr. Wilson also checked of boxes indicating that Plaintiff did not need a cane to walk; could continuously use both hands to reach, handle, finger, feel, push, and pull; could continuously use both feet to operate foot controls; could occasionally climb stairs and ramps; and could frequently climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl (Tr. 442-43). Dr. Wilson opined that Plaintiff had no impairments of her hearing or vision; could be continuously exposed to unprotected heights and moving mechanical parts; could frequently operate a motor vehicle; could frequently be exposed to humidity and wetness; could occasionally be exposed to dusts, odors, fumes, and pulmonary irritants; could frequently be exposed to extreme cold and heat; could continuously be exposed to

4

vibrations; and could be exposed to quiet and moderate noise (Tr. 444-45). Dr. Wilson opined that Plaintiff was capable of shopping; traveling without a companion for assistance; walking without using a wheelchair, walker, 2 canes, or 2 crutches; walking a block at a reasonable pace on rough or uneven surfaces; using standard public transportation; climbing a few steps at a reasonable pace with the use of a single hand rail; preparing simple meals and feeding herself; caring for her personal hygiene; and sorting, handling, and using paper and files (Tr. 445). Dr. Wilson opined that Plaintiff's limitations had lasted or would last for 12 consecutive months (Tr. 446).

### 2. Mr. Carter's Records

Mr. Carter is a nurse who treated Plaintiff for four years from 2008 to 2012 (Tr. 520, 315-365, 643-673). Plaintiff saw Mr. Carter about every month, sometimes more than once per month, during the four years for which Mr. Carter's treatment notes are in the record. Many of Plaintiff's appointments were merely to obtain refills of her medications. Others were for typical colds and other minor concerns. Plaintiff complained of nausea and vomiting seven times during her treatment with Mr. Carter, and Plaintiff complained of diarrhea four times (Tr. 334, 336, 347, 349, 351, 352, 355, 363, 664). Plaintiff complained of various aches and pains over the years to Mr. Carter, including body aches (Tr. 363); pain in her neck and jaw (Tr. 347); shoulder pain from heavy lifting (Tr. 337); neck pain (Tr. 319-20); pain in her neck, right leg, and left knee from a motor vehicle accident (Tr. 663); and headaches (Tr. 331, 650). Mr. Carter diagnosed Plaintiff with fibromyalgia (Tr. 358), positional vertigo (Tr. 356), a C. difficile infection (Tr. 351), chronic obstructive pulmonary disease (Tr. 342), tension headaches (Tr. 331), and depression (Tr. 660). However, Mr. Carter noted that Plaintiff was "doing well" at 12 different appointments—August 5, 2008 (Tr. 353); February 24, 2009 (Tr. 340); April 15, 2009 (Tr. 339);

5

May 18, 2009 (Tr. 338); October 22, 2009 (Tr. 333); March 29, 2010 (Tr. 324); April 28, 2010 (Tr. 323); December 2, 2010 (Tr. 671); January 5, 2011 (Tr. 670); March 2, 2011 (Tr. 668); May 31, 2011 (Tr. 665); and July 21, 2011 (Tr. 664). Indeed, Mr. Carter's treatment notes reflect that Plaintiff was able to wean herself off of Duragesic pain patches (Tr. 333); had reinstated her nursing license and would be returning to work (Tr. 339); had reported that her back pain was stable and her depression medication was working well (Tr. 332); had reported that her neck pain was improved by the injections of pain medicine Mr. Carter had administered to Plaintiff (Tr. 318); and had reported that her anxiety was controlled (Tr. 664). From the notes, Plaintiff did not successfully heed Mr. Carter's advice to quit smoking (Tr. 330) or to get a CT scan (Tr. 662).

On March 29, 2012, Mr. Carter wrote a letter stating: "I have been treating the above named [patient] for multiple problems including chronic pain issues since 1/2008. She has had neck surgery and problems with depression in that time. Her problems have continued to progress and worsen since then." (Tr. 520). Mr. Carter completed a medical opinion assessment for Plaintiff on October 4, 2012, in which he noted that Plaintiff could lift and carry 20 pounds on an occasional basis; lift and carry 10 pounds on a frequent basis; stand and walk for about two hours in an eight-hour day; sit for about two hours in an eight-hour day; sit for 30 minutes before needing to change position; and stand for 15 minutes before needing to change position (Tr. 674). Mr. Carter further opined that Plaintiff would need to walk around every 30 minutes; that these walks would need to be five minutes long; that Plaintiff needs the opportunity to shift between sitting and standing or walking; that Plaintiff will not need to lie down at unpredictable intervals during an eight-hour shift; and that these limitations are caused by Plaintiff's chronic neck pain, which worsens with prolonged sitting or standing due to her spinal fusion (Tr. 674). Mr. Carter opined that Plaintiff can occasionally twist but never climb stairs or ladders, but Mr.

6

Carter did not place any limitations on Plaintiff's ability to stoop or crouch (Tr. 675). Mr. Carter noted that Plaintiff's neck stiffness makes it difficult for her to look up and down to successfully negotiate stairs, and noted that she should avoid heights due to her chronic narcotic use (Tr. 675). Mr. Carter opined that Plaintiff's ability to reach, push, and pull were limited by her impairments, but her abilities to finger, handle, and feel were not impaired (Tr. 675). Mr. Carter opined that Plaintiff should avoid concentrated exposure to high humidity, fumes, odors, dusts, gases, perfumes, and soldering; Mr. Carter also opined that Plaintiff should avoid even moderate exposure to extreme cold and heat as well as solvents, cleaners, and chemicals (Tr. 675). Mr. Carter opined that Plaintiff's impairments would cause her to miss more than four days of work per month (Tr. 675).

### 3. State Agency Consultants' Records

On March 14, 2011, Dr. Chaudhuri completed a physical RFC assessment for Plaintiff after reviewing the evidence in the file (Tr. 447-55). Dr. Chaudhuri opined that Plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand or walk for a total of about six hours in an eight-hour day; sit for about six hours in an eight-hour day; push and pull without limitation; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally reach overhead and frequently reach in all other directions; handle, finger, and feel without limitation; see and communicate without limitation; and be exposed to environmental factors such as extreme temperatures, wetness, humidity, noise, vibration, fumes, odors, gases, poor ventilation, and hazards such as machinery and heights without limitation (Tr. 448-51). Dr. Chaudhuri opined that she expected Plaintiff's condition to improve within 12 months from October 6, 2010, the date of her cervical spine surgery (Tr. 452). Dr. Chaudhuri found that Dr. Wilson's conclusions

7

were "too restrictive" because his opinion reflected only how Plaintiff was currently functioning, not how her symptoms would improve with time (Tr. 453).

On June 8, 2011, Dr. Robinson reviewed Plaintiff's record including Dr. Chaudhuri's assessment (Tr. 459). Dr. Robinson stated that Dr. Chaudhuri's assessment was technically correct and he found the assessment to be current, as Plaintiff had not alleged any changes in her condition, new limitations, or new impairments (Tr. 459).

### C. Hearing Testimony

At the hearing on October 10, 2012, Plaintiff and vocational expert Richard Hark ("VE") testified (Tr. 37). The Court has carefully reviewed the transcript of the hearing, however, only the portions of the hearing relevant to the parties' arguments will be addressed within the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security

8

Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.     The ALJ's Findings

In the ALJ's decision, dated November 8, 2012, he made the following findings. At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since January 1, 2009, the alleged onset date (Tr. 23). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine status post fusion, irritable bowel syndrome, bilateral carotid stenosis, and affective and substance dependence disorders (Tr. 23). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively

9

disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 24). The ALJ specifically considered Listings 12.04 and 12.06, and further considered the paragraph B and paragraph C criteria of the mental disorders listings (Tr. 24-26). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, "except with specific limitations as set forth by the consultative examiner in Exhibit 9F and no sudden neck movements or prolonged looking down (no more than 30 minutes at a time). The claimant can meet the mental demands of simple, repetitive routine work." (Tr. 26). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 30). At step five, the ALJ noted that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, and was able to communicate in English (Tr. 30). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 30). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from January 1, 2009, the alleged onset date, through November 8, 2012, the date of the decision (Tr. 31).

## IV.  ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) giving the greatest weight to the opinion of Dr. Wilson, a consultative examiner; (2) failing to give proper weight to the opinion of Plaintiff's treating source, Mr. Carter, a nurse practitioner; (3) giving the opinions of non-treating and non-examining physicians greater weight than the opinion of Mr. Carter; and (4) failing to properly consider all of the Plaintiff's impairments and failing to provide sufficient reasons for not finding these impairments to be severe. Because I conclude that remand is necessary after considering

Plaintiff's first argument as to the opinion of Dr. Wilson, I need not address Plaintiff's remaining arguments.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore,

the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     ALJ's Consideration of Dr. Wilson's Opinion

Plaintiff contends that Dr. Wilson's opinion was internally inconsistent and that the ALJ erred by giving his opinion the greatest amount of weight and explicitly basing Plaintiff's RFC on Dr. Wilson's opinion.  Plaintiff argues that Dr. Wilson's assessment that Plaintiff could lift 11-20 pounds occasionally but never lift more than 20 pounds is inconsistent with his assessment that Plaintiff could carry 11-20 pounds frequently and 21-50 pounds occasionally, because "[i]t is common knowledge that an individual must be able to lift an object in order to carry the object" [Doc. 14-1 at Page ID # 733].  Plaintiff further argues that Dr. Wilson's assessment that she can only occasionally climb stairs and ramps is inconsistent with his assessment that she can frequently climb ladders and scaffolds, because "an individual must be able to climb in order to climb a ladder and scaffolds" [*Id.*].  Plaintiff argues that Dr. Wilson's opinion as to her limitations is "completely incomprehensible" and "does nothing but undermine the basic principal [sic] of fairness to the Plaintiff" [*Id.*].  Plaintiff contends that the ALJ should have contacted Dr. Wilson to clarify these inconsistencies, but states that the ALJ did not do so "in hopes that the inconsistency would be overlooked, or ignored" [*Id.*].  Plaintiff argues that

because the ALJ gave the greatest weight to Dr. Wilson's opinion, which is "completely illogical and inconsistent, the ALJ's decision is flawed and cannot stand" [*Id.* at Page ID # 733-34].

The Court notes that neither party cites to case law or other authority regarding whether it is error for an ALJ to adopt as part of his RFC finding a medical opinion containing an internal inconsistency regarding a claimant's abilities. Indeed, Defendant completely failed to respond to Plaintiff's arguments regarding the inconsistencies within Dr. Wilson's opinion when Defendant instead made only general arguments that the ALJ properly determined the weight given to the various sources in making his RFC determination.

In this case, the ALJ incorporated Dr. Wilson's opinion regarding Plaintiff's limitations into the RFC determination, which found "that the claimant has the residual functional capacity to perform light work . . . except with specific limitations as set forth by the consultative examiner in Exhibit 9F and no sudden neck movements or prolonged looking down . . . ." (Tr. 26). Dr. Wilson's opinion is Exhibit 9F. Thus, Dr. Wilson's opinions that Plaintiff can never lift more than 20 pounds but can carry 21 to 50 pounds occasionally, and his opinions that Plaintiff can only occasionally climb stairs and ramps but can frequently climb ladders or scaffolds, are included as part of Plaintiff's RFC determination.

Defendant makes no argument in response to Plaintiff's contention that the limitations are internally inconsistent because "it is common knowledge that an individual must be able to lift an object in order to carry the object, and an individual must be able to climb in order to climb a ladder and scaffolds." I agree that these limitations appear to conflict with each other, and it is unknown whether clarification of the limitations would affect the VE's testimony or the ALJ's decision. The conflicting limitations within Dr. Wilson's assessment are particularly notable because the opinions of the non-examining state agency consultants, to which the ALJ gave

13

significant weight (Tr. 29), did not include these same inconsistencies. Dr. Chaudhuri's opinion, which was adopted by Dr. Robinson, was based upon a review of the record, and was largely based upon Dr. Wilson's assessment; nevertheless, Dr. Chaudhuri's opinion differed from Dr. Wilson's opinion by finding that Plaintiff was able to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and occasionally climb ramps and stairs, but Plaintiff never able to climb ladders, ropes, or scaffolds (Tr. 448-49). The ALJ, however, did not adopt Dr. Chaudhuri's opinion in his RFC, he adopted Dr. Wilson's opinion.

This Court and other courts have overlooked internal inconsistencies within written ALJ RFC determinations as typographical errors where the written RFC contains an inconsistency, but the hearing transcript makes it clear that the ALJ asked a VE a hypothetical that did not include the error. *Correll v. Astrue*, No. 3:08-CV-280, 2009 WL 2601917, at *6 (E.D. Tenn. Aug. 24, 2009); *Shearman v. Comm'r of Soc. Sec.*, No. 1:12-CV-760, 2014 WL 1217966, at *1 (S.D. Ohio Mar. 24, 2014). Here, however, the ALJ asked the VE to consider the following hypothetical:

> Let's start with Dr. Wilson's report. Assuming a person of the claimant's age, education, and work experience. Assume such person had the limitations and the abilities stated by Dr. Wilson, and add to that no sudden neck movement -- where was I? Let me find my notes -- no sudden neck movements and no prolonged forward neck flexion, which I'm going to define as not more than 30 minutes at any one time. And the work would need to be SVP 1 or 2 due to the effects of pain, depression, medication. All right. With within those limitations -- well, you know, I guess I just should clarify for the record. I'm using Dr. Wilson's thing as a base and then adding to it what I said. All right. Within those limitation[s], could such a person perform the claimant's past work?

(Tr. 61). Based on the hypothetical, the VE informed the ALJ that such a person could perform Plaintiff's past work as a customer service representative, in addition to other jobs such as a

14

weave defect charting clerk in the textile industry, a weight tester in the paper and pulp industry, and a surveillance system monitor job (Tr. 61-62).

Given that the hypothetical asked by the ALJ specifically incorporated Dr. Wilson's opinion regarding Plaintiff's limitations, the hypothetical therefore also contained the same inconsistencies as the written decision. Thus, this case is not merely a typographical error in the written decision that can be overlooked by the Court. Rather, it is one where remand is necessary for the inconsistencies to be resolved. *See Mullen v. Bowen*, 800 F.2d 535, 553 (6th Cir. 1986) (noting that the Sixth Circuit had "directed that a more comprehensive rationale be given in resolving [the] inconsistency," where the doctor's assessment "indicated that there was no impairment of the claimant's ability to relate to other people," while also indicating "there was a moderately severe limitation in his ability to perform work requiring frequent or minimal contact with others").

While authority may exist to support an argument that remand is not necessary here given the chance that clarification of the limitations may not render the decision favorable, Defendant has not presented such authority or even addressed the issue. Therefore, given the apparent inherent internal inconsistencies in Dr. Wilson's assessment of Plaintiff's limitations, and the ALJ's reliance upon and incorporation of Dr. Wilson's assessment into the written RFC finding and the hypothetical posed to the VE at the hearing, I **FIND** that the ALJ's decision to give "greatest weight" to Dr. Wilson's opinion in its entirety, without discussing or discounting the inconsistent portions, is not supported by substantial evidence. I therefore **CONCLUDE** that remand is necessary so that the Commissioner can provide clarity regarding the issues addressed herein.

Because I find that remand is necessary, I need not address Plaintiff's remaining arguments.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[1] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits.

2) The Commissioner's motion for summary judgment [Doc. 15] be **DENIED**.

3) The Commissioner's decision denying benefits be **REVERSED AND REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

> s/ *Susan K. Lee*
> SUSAN K. LEE
> UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).